**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 13-175 |
| | ) | Civil No. 15-76 |
| DAVID ISABELLA, | ) | Judge Nora Barry Fischer |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

## I.    INTRODUCTION

This matter is before the Court on a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 ("Motion") filed by *pro se* Defendant David J. Isabella ("Defendant").    (Docket No. 175).   Defendant seeks to vacate his guilty pleas to three counts of wire fraud in violation of 18 U.S.C. § 1343 and/or to set aside the sentence of 6 months' incarceration, and three years of supervised release imposed by the Court.   (Docket Nos. 90, 151).    The Government filed a Response on July 13, 2015, advocating that Defendant's Motion be denied as unmeritorious and attaching a portion of the change-of-plea transcript in support of its position.   (Docket No. 184). The official transcript of the entire change-of-plea proceeding was then filed of record by the court reporter on July 14, 2015.[1]   (Docket No. 185).   After careful consideration of all of the facts of record and for the following reasons, Defendant's § 2255 Motion is denied.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 18, 2013, a federal grand jury returned an eight count Indictment against

---

[1]    The official transcript of the sentencing proceeding was not ordered by the parties and the Court resolves the instant motion by consulting a rough version of the transcript and its notes from that proceeding.   *See Sent. Trans. 9/29/14.*

Defendant and his older brother, Daniel Isabella,[2] alleging that they participated in a ticket fraud scheme wherein they sold non-existent event tickets to unwitting customers through postings on www.craigslist.com.  (Docket No. 1).  Defendants spoke to their victims over the telephone, assuring them that the sales were legitimate, and induced the victims to wire money to them for these supposed purchases.  (*Id.*).  Defendants kept the money they received for their own personal uses and did not deliver tickets to the victims, as promised.  (*Id.*).  The Indictment charged Defendant with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count One), and three substantive counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts Two, Seven and Eight).  (*Id.*).  Defendant's trial counsel, Patrick K. Nightingale, Esquire, ("trial counsel") entered an appearance on his behalf and represented him throughout the trial phases of this case.[3]  (Docket No. 14).

This Court conducted a change-of-plea hearing in Defendant's case on March 6, 2014 at which time he was 22 years old; he had a high school degree and had completed two years of college courses, including a criminal justice course; he had no mental or physical ailments that precluded his ability to participate in the proceedings; he also was not under the influence of any alcohol or narcotics; and he had been successfully attending outpatient drug rehabilitation programming set up by Pretrial Services.  (Docket No. 185 at 3-4).  The Court was aware from a prior status conference that Defendant had been working at Joe's Crab Shack.  (*Id.* at 43).  At the change-of-plea hearing, he advised that he had started a new job as a cab driver for Yellow Cab

---

[2]     Defendant's older brother, Daniel, pled guilty to Counts 3-6 of the Indictment on February 7, 2014.  (Docket Nos. 83, 84).  Daniel was sentenced on July 9, 2014 to 18 months' incarceration for his offenses, followed by three years of supervised release and was also ordered to pay $53,426.79 in restitution and a special assessment of $300.00. (Docket No. 139).
[3]     The Court notes that at a point later in the case, Mr. Nightingale was appointed to represent Defendant under the Criminal Justice Act given his inability to pay the fees required.  (Docket Nos. 79, 80).

approximately 2 weeks prior to the proceeding and was reportedly doing well at this new position. (*Id.* at 43-44). Based on this record and the assertions of Defendant and his counsel, the Court found that he was competent to participate in the hearing and to plead guilty if that was his intent. (*Id.* at 6).

The Court and the parties examined the terms and conditions of Defendant's plea agreement which permitted him to plead guilty to Counts Two, Seven and Eight of the Indictment. (*See* Docket Nos. 89, 90, 185; *Plea Agreement*). In exchange for the Government's agreement to dismiss Count One, Defendant acknowledged responsibility for the conduct charged in that count, agreed to pay mandatory restitution, and agreed to waive his right to take a direct appeal from his conviction or sentence, except under limited specified circumstances. (Docket No. 185 at 18, 21-23). The plea agreement also contained stipulations between the parties affecting the advisory guidelines calculations in the case, e.g., the loss amount was between $30,000 to $70,000; that there were more than 50 but less than 250 victims of the ticket fraud scheme; and that Defendant qualified for a three level reduction for acceptance of responsibility and timeliness of his guilty pleas. (*Id.* at 20). In addition, the plea agreement set forth the statutory penalties for the offenses of conviction: a maximum term of incarceration of 20 years; a term of supervised release of 3 years; a special assessment of $300.00; mandatory restitution to be determined by the Court; and a fine. (*Id.*).

Following an extensive colloquy, the Court determined that Defendant understood the nature of the charges against him; all of the elements of the offenses to which he was pleading guilty and the potential statutory penalties he was subject to for such violations; the constitutional and statutory rights he was waiving by entering guilty pleas, such as his rights to a trial by jury and

3

the assistance of counsel throughout the processing of the charges against him; and all of the terms and conditions of the plea agreement. (Docket No. 185). He further assured the Court that he understood that the sentence he would receive for his criminal conduct would be imposed by the Court pursuant to the advisory sentencing guidelines after considering a Presentence Investigation Report, ("PIR"), any Addendum, and argument from counsel for the parties. (*Id.* at 12-13, 25, 30). He acknowledged that no one had promised him what his actual sentence would be, forced him to plead guilty, or made any promises to him outside of the terms and conditions set forth in the plea agreement. (*Id.* at 37).

Defendant accepted the Government's entire proffer of his criminal conduct, without any changes, admitting that he and his brother utilized their www.craigslist.com ticket fraud scheme to defraud approximately 104 victims of around $29,700 over the period of January 2012 through September 2012. (*Id.* at 32-34). During the change-of-plea hearing, Defendant twice asserted under oath that he was satisfied with the representation of his trial counsel to date. (*Id.* at 6, 33). Ultimately, the Court accepted Defendant's change of pleas and entered a judgment of guilt as to Counts Two, Five, and Seven. (Docket Nos. 89, 90, 185).

Defendant's bond was continued until his sentencing. The Court issued Tentative Findings on June 18, 2014, noting the lack of objections by the parties to the PIR and finding that Defendant's total offense level was 14 and his criminal history category was I, producing an advisory guideline range of 15 to 21 months incarceration. (Docket No. 124). In advance of sentencing, Defendant, through his trial counsel, filed a Sentencing Memorandum advocating to the Court for a variance below the range of 15 to 21 months and the imposition of a non-incarceration sentence, highlighting, among other things, his lack of a criminal history; his

strong work history and progress in his position as a cab driver; and his ability to earn money working in this position to pay off his expected restitution obligation. (Docket No. 137). The Government disagreed, with its counsel arguing in a Sentencing Memorandum that a sentence of incarceration within the range of 15 to 21 months was appropriate in Defendant's case. (Docket No. 136). Counsel for the parties advised the Court at a telephone sentencing conference that if a sentence of imprisonment was imposed, there was no objection by the Government to Defendant self-reporting to the Bureau of Prisons or to his request that the Court recommend that he be designated at a facility as close to Pittsburgh, Pennsylvania, as possible. (Docket No. 148).

At the outset of the sentencing hearing on September 29, 2014, Defendant was sworn and he confirmed to the Court that he had reviewed the PIR, Addendum and the Court's Tentative Findings and Rulings with his counsel and that he had no questions about same. (Docket No. 150). The Court heard evidence from the parties including witness testimony from three of Defendant's supporters and his allocution. (*Id.*). There was some discussion concerning Defendant's ability to make an immediate payment of $7,000 toward his restitution obligation but he did not know to what entity or person to make out the check, leading the Court's staff to confer with the Clerk's Office during the proceeding to obtain such information on his behalf. *See Sent. Hr'g Trans. 9/29/14.* When the presentation of evidence concluded, counsel provided oral argument, carrying forward the positions that they had previously made in their sentencing memoranda, with defense counsel advocating for a variance and non-incarceration sentence and the Government pushing for a sentence of incarceration within the advisory guidelines range. (*Id.*). After considering the factors set forth 18 U.S.C. § 3553(a), the Court granted Defendant's motion for a variance, in part, and sentenced Defendant to a term of six months' incarceration at

each of Counts Two, Seven and Eight, followed by three years' supervised release and ordered him to pay restitution in the amount of $30,199.91 and a special assessment of $300.00. (Docket No. 151).

Near the conclusion of the sentencing proceeding, on Defendant's behalf, his counsel advocated for the Court to make a recommendation that he be permitted to serve his sentence at the Renewal Center, a local community corrections center or halfway house. *See Sent. Hr'g Trans. 9/29/14.* The Government opposed this position. (*Id.*). Once again, the Court sided with Defendant and made the recommendation to the Bureau of Prisons that "Defendant's term of incarceration shall be served at a residential re-entry center (such as Renewal, Inc., 339 Blvd. of the Allies, Pittsburgh, PA 15222)." (Docket No. 151 at 2) The Court also ordered Defendant to self-surrender to the United States Marshal Service by 9:00 a.m. on November 10, 2014 unless he was ordered to report sooner by the Bureau of Prisons. (*Id.*). Finally, the Court advised Defendant of his appeal rights, specifically telling him that any notice of appeal must be filed with the Clerk of Court within 14 days of the sentencing proceeding, making the filing of any appeal due by Tuesday, October 14, 2014 given the Columbus Day Holiday on the 13th. (*See Sent. Hr'g Trans. 9/29/14*).

Subsequent to the sentencing hearing, Defendant satisfied his special assessment obligation and made the payment of $7,000 toward his restitution. (Docket Nos. 152, 154). On November 12, 2014, trial counsel filed a "Motion to Permit Defendant to Operate a Common Carrier" wherein he notified the Court that he had started to serve his sentence at the Renewal Center but that he required an Order of Court for that entity to permit him to continue working as a

cab driver during his term of community confinement.[4]  (Docket No. 154).  The Government filed a Response in Opposition on November 21, 2014, arguing that the Court lacked jurisdiction to grant Defendant's request as he was in the custody of the Bureau of Prisons at the time and further advised that representatives of the Renewal Center were contacted and they also opposed the request because that type of work was against the policies of the community corrections center. (Docket No. 155).  This Court entered an Order on November 21, 2014 stating that "upon consideration of Defendant's Motion to Permit Defendant to Operate Taxicab While at Renewal Center [154] and the Government's well-taken Response in Opposition [155], … said Motion [154] is DENIED."  (Docket No. 156).

Three days later, Defendant filed a Motion for Furlough, requesting that he be permitted to spend Thanksgiving Day with his family between 8:00 a.m. and 8:00 p.m. rather than in custody of the Renewal Center. (Docket No. 157).  The Government once again opposed this Motion, arguing that the Renewal Center did not consent to this request and it was outside the scope of his restrictions as a community corrections detainee, which limited his access to the community except for work, medical treatment and church services and did not permit recreational or leisure passes.  (Docket No. 158).  The Court denied this Motion in a Text Order entered on November 24, 2014.

Later, on January 16, 2015, attorney Scott Wescott, Esquire ("§ 2255 counsel") entered an appearance on Defendant's behalf and filed a Motion to Vacate under 28 U.S.C. § 2255 and Brief

---

[4]        The Court's record contains a "Staff Note" on the CM/ECF System indicating that the Court's deputy clerk received a telephone call from an individual purporting to be David Isabella who requested to speak with the undersigned.  (*See Text Staff Note 11/12/14*).  As required by this Court's Practices and Procedures, the Court's deputy clerk advised this individual that any communications with the Court should be made through his counsel of record.  (*Id.*).

in Support. (Docket Nos. 162, 163). Among other things, Defendant sought to set aside his sentence on the basis of alleged ineffective assistance of counsel due to his trial counsel's advocacy for a sentence in a community confinement center that later refused to permit him to work as a cab driver. (Docket No. 163). He claimed, erroneously, that the Court's sentence of 6 months imprisonment was part of a Rule 11(c)(1)(C) plea agreement with the Government and that his ability to continue driving a cab was part of such agreement. (*Id.*). Defendant also complained that he was not advised by his trial counsel of all of the elements of wire fraud prior to guilty plea; had not been provided with a copy of the Addendum to the PIR; and, was not consulted about an appeal of the sentence after realizing that he could not work as a cab driver while in community confinement. (*Id.*). He further argued that the Indictment should be dismissed based on an alleged unconstitutional composition of the grand jury as lacking minorities, despite the fact that he is a Caucasian male. (*Id.*). Overall, Defendant asked the Court to set aside his convictions and/or to resentence him to home confinement or probation so that he could continue to work as a cab driver, a request which the Renewal Center had refused and the Court had denied. (*Id.*).

As § 2255 counsel had entered his appearance on Defendant's behalf as retained counsel, indicating that he now had the ability to pay for an attorney, the Court ordered him to purchase the transcript of the sentencing proceeding so that it could fully evaluate his § 2255 Motion. (Docket No. 165). The Court also separately ordered the Government to respond to his § 2255 Motion. (Docket No. 164). Defendant replied by filing a Motion for Interim Payment and Amended Motion for Interim Payment essentially seeking the Court to authorize the appropriation of CJA funds to purchase the transcript and/or to direct the Government to purchase the transcript. (Docket Nos. 166, 167). As expected, the Government opposed same, arguing that Defendant's §

2255 Motion was frivolous and that it should not bear the costs of the transcript. (Docket No. 169). Defendant then filed a Reply Brief addressing the Government's position. (Docket No. 170). Having reviewed all of these submissions, the Court entered an Order on February 18, 2015 directing § 2255 counsel and Defendant to file, under seal, a copy of their power of attorney and/or retainer agreement, citing *Guide to Judiciary Policy*, Vol. 7, Pt. A, § 310.10.10 and § 310.10.20 ("(a) In responding to requests for services under 18 U.S.C. § 3006A(e) by a person represented by retained counsel, the court should inquire into the fee arrangement between the retained attorney and the client. (b) If the court finds the fee arrangement unreasonable... the court may order the retained attorney to pay out of such fees all or such part of the costs and expenses as the court may direct.").

Rather than submit the fee arrangement to the Court, on February 25, 2015, § 2255 counsel filed a Motion to Withdraw Defendant's 2255 Motion to Vacate. (Docket No. 172). § 2255 counsel asserted that "[u]pon speaking with Defendant and reviewing the apparent pragmatic timing issues with respect to this filing, counsel advised Defendant that it would not prove fruitful to pursue the 2255 Motion to Vacate" and that "Defendant now agrees with counsel the pursuing this 2255 Motion to Vacate would be fruitless and the waste of this Court's resources." (*Id.*). Based on these representations, the Court granted the Motion to Withdraw and also terminated the Motion for Interim Payment, as moot. (Docket No. 174).

On May 15, 2015, Defendant filed the instant *pro se* § 2255 Motion. (Docket No. 175). He reported in his Motion that he had been released from the Renewal Center after serving all 6 months of the incarceration portion of his sentence. (*Id.*). Defendant generally makes the same allegations as the initial counseled § 2255 Motion that was filed on his behalf by § 2255 counsel

9

but adds a claim that § 2255 counsel provided ineffective assistance of counsel by withdrawing the prior § 2255 Motion without his consent. (*Id.*). In addition to vacating his conviction and sentence, Defendant also seeks to have this Court order § 2255 counsel to return the attorneys' fees that were paid to him. (*Id.*).

This Court responded by entering its standard order pursuant to *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999), advising Defendant that all federal constitutional claims had to be included in a single habeas corpus petition and of his right to: (1) withdraw the pending motion and file one new, all-inclusive § 2255 motion setting forth every ground which may entitle him to relief from his conviction and sentence, provided that such motion is timely; (2) amend the § 2255 motion presently on file to include any additional claims or materials he wished to raise; or (3) choose to proceed with the motion, as filed. (Docket No. 176). Defendant did not respond to the *Miller* Order and the Court entered a follow-up order directing the Government to file its Response, (Docket No. 181), which was filed on July 13, 2015. (Docket No. 184). The official transcript of the change-of-plea proceeding was then filed with the Court on July 14, 2015. (Docket No. 185). Neither party has sought leave of court to make any additional submissions nor does the Court believe that further briefing is necessary. Accordingly, this matter is now ripe for review.

## III. STANDARD OF REVIEW

A prisoner in federal custody may move to vacate his or her sentence under 28 U.S.C. § 2255(a) if such "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). "A prisoner seeking relief on the grounds of ineffective assistance of counsel bears the burden to demonstrate two requirements," *United States v. Seeley*, 574 F.

10

App'x 75, 78 (3d Cir. 2014), which were initially set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffective assistance of counsel under *Strickland*, a defendant "must establish that (1) the performance of counsel fell below an objective standard of reasonableness; and, (2) counsel's deficient performance prejudiced the defense." *United States v. Otero*, 502 F.3d 331, 334 (3d Cir. 2007) (citing *Strickland*, 466 U.S. at 688, 694); *see also Roe v. Flores–Ortega*, 528 U.S. 470, 476–477 (2000) (citing *Strickland*, 466 U.S. at 688, 694) (same). The United States Court of Appeals for the Third Circuit has "endorsed the practical suggestion in *Strickland* [that the Court may] consider the prejudice prong before examining the performance of counsel prong 'because this course of action is less burdensome to defense counsel.'" *United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008) (quoting *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005), which quoted *United States v. McCoy*, 410 F.3d 124, 132 n. 6 (3d Cir. 2005)); *see also Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Generally, a district court must order an evidentiary hearing in a federal habeas case if a criminal defendant's § 2255 allegations raise an issue of material fact. *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992). But, if there is "no legally cognizable claim or the factual matters raised by the motion may be susceptible of resolution through the district judge's review of the motion and records in the case," the motion may be decided without a hearing. *United States v. Costanzo*, 625 F.2d 465, 470 (3d Cir. 1980); *see also Lilly*, 536 F.3d at 195. If a hearing is not held, the district judge must accept the criminal defendant's allegations as true "unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Bradshaw*, 726

F.2d 115, 117 (3d Cir. 1984). Similarly, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation." *United States v. Knight*, 2009 WL 275596, at \*13 (W.D. Pa. 2009) (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000)).

## IV. DISCUSSION

The majority of Defendant's grounds for relief raise ineffective assistance of counsel claims as he challenges: his § 2255 counsel's withdrawal of the prior § 2255 Motion without his consent; his trial counsel's failure to advise him of all of the elements of wire fraud, including the materiality element; his trial counsel's ineffective advocacy at sentencing resulting in him serving a 6 month sentence at Renewal where he was not permitted to continue working as a cab driver; his trial counsel's failure to review the Addendum to the PIR with him; and, the subsequent failure of trial counsel to consult with him about filing an appeal. (Docket No. 175). The Government maintains that Defendant cannot show that he was prejudiced by his trial counsel or his § 2255 counsel on this record. (Docket No. 184). Having fully reviewed these matters, the Court finds that Defendant has not demonstrated a right to relief under § 2255 as his allegations are unsupported, conclusively refuted by the record and/or he cannot meet the requirements under *Strickland* to demonstrate that either of his attorneys provided ineffective assistance of counsel to him. Accordingly, the Court denies Defendant's § 2255 Motion and his request for a hearing.

At the outset, despite the fact that Defendant has already served his 6 month sentence of imprisonment in community confinement at the Renewal Center, his § 2255 Motion is not moot because he is still subject to the remainder of his term of three years of supervised release. *See United States v. Doe*, --- F.3d ---, 2015 WL 5131206, at \*5 (3d Cir. Sept. 2, 2015) (holding that a §

2255 petition was not moot by the fact that a defendant had already served a challenged sentence of imprisonment as he remained on a term of supervised release that could be reduced). The Court cannot alter the six month sentence that has already been served. *Id.* However, in the event that he met his burden of persuasion on this Motion, the Court could grant other relief to him, such as reducing the term of supervised release. *See id.* Accordingly, the Court will continue with its analysis explaining why Defendant has failed to meet his high burden to demonstrate ineffectiveness of his counsel on each of the issues he has raised. *See Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) ("Surmounting *Strickland's* high bar is never an easy task.").

Moving on, Defendant has simply not demonstrated that he has been prejudiced by § 2255 counsel's purported withdrawal of the earlier § 2255 Motion without his consent as he argues.[5] (*See* Docket No. 175). He cannot establish that the outcome of these proceedings would be any different if that earlier motion had not been withdrawn because he refiled his § 2255 Motion raising almost identical arguments challenging the alleged deficient performance of his trial counsel and the Court addresses below why none of those claims are meritorious.[6] *See United*

---

[5]    The Court notes that there is a clear conflict in the record on this point because § 2255 counsel represented in the Motion to Withdraw, as an officer of the court, that he had consulted with Defendant and that he agreed to the withdrawal. (*See* Docket Nos. 172, 175). The Court doubts the veracity of Defendant's version of events that transpired between he and § 2255 counsel but the resolution of such factual disputes is unnecessary to the disposition of Defendant's claim that § 2255 counsel was ineffective because he cannot establish prejudice. (*Id.*). To the extent that Defendant seeks the return of attorneys' fees paid to his § 2255 counsel, this Court lacks jurisdiction over what amounts to a civil breach of contract dispute for an amount that is likely well below the jurisdictional limit of $75,000.00 between two non-diverse Pennsylvania residents. *See* 28 U.S.C. § 1332. The Court expresses no opinion as to the merits of such a claim.

[6]    Insofar as Defendant complains about the delays caused by the withdrawal, as § 2255 counsel pointed out, the timing of events was such that the Court would not have rendered a decision on the § 2255 Motion prior to his being released from Renewal in May of 2015, which was the driving force behind his filing of the Motion. (Docket No. 172). The counseled § 2255 Motion was withdrawn on February 25, 2015, at a point in time when the official transcripts of the proceedings had not even been ordered or filed on the record and the Government had yet to file a substantive response. (Docket No. 174). Beyond these submissions, this Court has a non-binding internal policy or procedure setting a goal of resolving these types of dispositive motions within 90 days of the matter being fully

*States v. Fazio*, 795 F.3d 421, 426 (3d Cir. 2015) (quoting *Strickland*, 466 U.S. at 694) ("Under the second, or 'prejudice' prong, he must demonstrate that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'").

The Court now turns to its evaluation of the claimed ineffectiveness of Defendant's trial counsel, starting with the following legal principles. Where a criminal proceeding culminated in the entry of guilty pleas, as in the instant case, prejudice is established by the defendant "show[ing] that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Further, "an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where ... an adequate plea hearing was conducted." *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (quoting *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007)). Finally, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Following this precedent, the Court has reviewed the record of the change-of-plea proceedings in this matter including the transcript of the Court's colloquy with Defendant and the parties' plea agreement, and finds no merit to Defendant's claims of ineffectiveness by his trial counsel. (*See* Docket No. 185; *Plea Agreement*).

---

briefed. Hence, as the § 2255 motion was not yet ripe at a point less than 90 days prior to his release date, it is more than likely that Defendant would have been released from Renewal prior to any ruling being issued by the Court.

That record demonstrates that Defendant is intelligent, well-educated (i.e., a high school graduate with some college courses), and articulate. (Docket No. 185 at 3-4). At the time of his guilty pleas, he was not under the influence of any substances, nor operating under any infirmities. (*Id.* at 4-6). The Court found him competent and capable to meaningfully participate in the proceedings. (*Id.* at 6). Defendant twice asserted that he was satisfied with the performance of his trial counsel. (*Id.* at 6, 33). This Court concluded that he had knowingly and voluntarily pled guilty to the three counts of wire fraud pursuant to a plea agreement with the Government. (*Id.* at 39). He asserted, under oath, that he understood all of the terms of the plea agreement, including the fact that he had waived his right to appeal his convictions and the Court's sentence, absent the narrow exceptions in the plea letter. (*Id.* at 13-26). Defendant acknowledged that he was aware of the nature of the charges against him, all of the elements of wire fraud and the potential penalties for his convictions. (*Id.* at 26-39). He told the Court that he understood that he would be sentenced under the advisory sentencing guidelines and assured the undersigned that he had not received any promises as to the actual sentence that would be imposed, with a recognition that any predictions made by his counsel about a potential sentence were not binding on the Court. (*Id.* at 37-38). Overall, Defendant responded appropriately to all of the Court's questions and was provided an opportunity, as necessary, to consult with his trial counsel if he had any questions for him. After undergoing this comprehensive colloquy with Defendant, the Court accepted his guilty pleas. (*Id.* at 39).

With this backdrop, Defendant's ineffective assistance of counsel claims can be addressed with dispatch. To this end, Defendant makes a series of clearly erroneous statements in his § 2255 Motion about the nature of his plea agreement as a Rule 11(c)(1)(C) plea agreement

recommending the imposition of a 6 month sentence and a separate assertion that a central part of the plea agreement was that he be able to continue to drive a cab while in community confinement at Renewal. (*See* Docket No. 175). But, none of these alleged terms were included in the written plea agreement nor were they made on the record at the change-of-plea hearing. (*See Plea Letter*; Docket No. 185). The record is also clear that there were no other terms and conditions between the parties outside of the written plea letter. Indeed, the plea letter contains a standard provision stating that "[t]his letter sets forth the full and complete terms and conditions of the agreement between DAVID J. ISABELLA and the United States Attorney for the Western District of Pennsylvania, and there are no other agreements, promises, terms or conditions, express or implied." *Plea Agreement* at p. 6. Defendant acknowledged on the record that he signed the plea agreement immediately following this passage and assented to its terms. (Docket No. 185 at 16).

Beyond these facts, Defendant's present assertion that his being able to continue to drive a cab was a central part of plea negotiations makes no sense because the plea letter was dated January 8, 2014, with the change-of-plea proceeding being scheduled upon request of defense counsel on February 19, 2014, prior to the time that he even started working as a cab driver. *See Plea Letter* at 1; Docket No. 88. In this regard, Defendant told the Court on March 6, 2014 that he had only been working as a cab driver for "about two weeks," starting around February 20, 2014. (Docket No. 185 at 43). Therefore, Defendant's continuing to work at Yellow Cab could not have played any meaningful part of the plea negotiations.

These same types of inconsistencies between Defendant's admissions during the colloquy that no additional promises were made to him, (Docket No. 185 at 37-38), and his later allegations

16

also undermine any contentions that his trial counsel made an erroneous prediction or promise to him that he would be able to work as a cab driver while at Renewal. *See Bui*, 795 F.3d at 367. All that is constitutionally required is for counsel to provide accurate advice to the defendant regarding his potential sentencing exposure under the relevant statutes and advisory guidelines range and to explain that any prediction that is provided is indeed an estimate. *Id.*; *see e.g., United States v. Hardy*, Crim. No. 09–151, Civ. A. No. 13–355, 2013 WL 3830507, at *10 (W.D. Pa. July 23, 2013) ("[C]ounsel's representation is not constitutionally deficient if he advises his client of an estimated advisory guidelines range that is later incorrect if Defendant understands it was an estimate and is correctly advised of the potential statutory penalties for the offense."). As noted above, Defendant's responses during the plea colloquy show that such requirements were satisfied in this case. (Docket No. 185 at 37-38).

In any event, from the Court's perspective, the sentencing advocacy by trial counsel was constitutionally sufficient, as he provided able argument on Defendant's behalf in a written Sentencing Memorandum and at the sentencing hearing seeking a variance below the advisory guidelines range of 15 to 21 months to a non-incarceration sentence – a position which was strongly contested by counsel for the Government. *See Sent. Hr'g Trans. 9/29/14*. The Court granted the variance motion, in part, sentencing Defendant to 6 months' incarceration. *Id.* Despite this ruling, trial counsel continued to argue on Defendant's behalf, amid additional opposition from Government counsel, and convinced the Court to make the recommendation that Defendant be able to serve his sentence of 6 months' incarceration at the Renewal Center, rather than a federal penitentiary. *See id*.

Next, Defendant could not have been prejudiced by the alleged failure of his trial counsel

to advise him about the materiality element of wire fraud because, as is outlined in the following passage, Defendant told the Court at the change-of-plea hearing that he understood that the government was required to prove each of the elements of wire fraud, including materiality, beyond a reasonable doubt.

> THE COURT: Mr. Desai, as the Assistant U.S. Attorney on this case, will you now please place on the record the elements of this case to which the defendant intends to plead so it will be clear to him and on this Court's record that he understands the nature of the offenses to which he may be entering pleas of guilty.
>
> MR. DESAI: Yes, Your Honor.
>
> There are three elements to the crime of wire fraud, which is a violation of 18 U.S.C. Section 1343. The first element is that the defendant devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations, or promises, or willfully participated in such a scheme with knowledge of its fraudulent nature. Two, the defendant acted with the intent to defraud. And three, that in advancing, furthering or carrying out the scheme, the defendant transmitted any writing, signal or sound by means of a wire, radio or television communication in interstate commerce or caused the communication of any writing, signal, or sound of some kind by means of wire, radio or television communication in interstate commerce.
>
> THE COURT: Thank you, Mr. Desai.
>
> Mr. Isabella, do you understand that if you had decided you wanted to go to trial, the government would have been required to prove each element of the offenses charged as Mr. Desai just recited them beyond a reasonable doubt in order to prove you're guilty?
>
> Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.

(Docket No. 185 at 32-33). The prosecutor's recitation of the elements was essentially a verbatim

18

review of the elements set forth in the Indictment Memorandum, which Defendant does not claim he failed to receive or review. (Docket No. 2). He also advised the Court several times that he understood the charges and had no questions for his counsel or the Court about them. (*See* Docket No. 185). Defendant's sworn assertions are entitled to a strong presumption of verity, *see Blackledge*, 431 U.S. at 73-74, and he has offered no evidence, let alone clear and convincing evidence, to upset or undermine his earlier statements. *See United States v. Jackson*, Crim. No. 10-233, 2015 WL 1000089, at *1 (W.D. Pa. Mar. 5, 2015) (Ambrose, J.) (quoting *Morris v. United States*, No. 04-1570, 2008 WL 1740679 (D. Del. Apr. 16, 2008)) ("absent clear and convincing evidence to the contrary, a court must presume the veracity of a defendant's statements made while under oath in open court."). Accordingly, as the record reflects that Defendant admitted to the Court, under oath, that he understood the elements of wire fraud, including materiality, he cannot establish prejudice by any error of his trial counsel by failing to review that particular element with him. *See id.*

Defendant's subsequent arguments that his trial counsel never provided him with a copy of the Addendum to the PIR and that trial counsel never reviewed it with him fails for the same reason. (Docket No. 175). Despite these averments, Defendant confirmed with the Court at the sentencing hearing, under oath and on the record, that he had received the Addendum and that his counsel reviewed it with him. (Docket No. 150) ("Oath administered to defendant; Court asks defendant questions [regarding] Presentence Report, Addendum & Tentative Findings, defendant answers [and] understands."); *see also Sent. Hr'g Trans. 9/29/14*. Further, the Addendum provided nothing of substance to Defendant's case, with the Probation Officer merely noting that the Government and Defendant had "filed no objections to the presentence report." (Docket No.

123).   Again, prejudice is lacking.

The last issue raised in the context of an ineffective assistance of counsel claim is Defendant's assertion that his trial counsel failed to meaningfully consult him about filing an appeal of his sentence.   (Docket No. 175).

> When a defendant claims counsel was ineffective in not taking an appeal, "the first step in the analysis is to determine whether counsel consulted with his client regarding an appeal ...." *Harrington v. Gillis*, 456 F.3d 118, 125 (3d Cir. 2006). "'If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.'" *Id.* (quoting *Roe v. Flores–Ortega*, 528 U.S. 470, 478, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000)). Counsel "consults" with his client when he "advis[es] the defendant about the advantages and disadvantages of taking an appeal and mak[es] a reasonable effort to discover the defendant's wishes." *Id.* at n. 3 (quoting *Flores–Ortega*, 528 U.S. at 478, 120 S.Ct. 1029 at 1035, 145 L.Ed.2d 985).

*United States v. Banks*, CR-09-341, 2011 WL 3897961, at *3 (M.D. Pa. Sept. 6, 2011).   But, it is well-settled that "[c]riminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver."   *United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008).   The Court of Appeals has also held that prejudice under *Strickland* is not presumed if an attorney fails to consult a client about a potential appeal when the record reveals that Defendant knowingly and voluntarily waived his rights to appeal in a plea agreement with the Government and there would be no miscarriage of justice if the waiver was enforced.   *See Mabry*, 536 F.3d at 236-38.   Indeed, the Court of Appeals has recognized that filing an appeal in a case with a clear appellate waiver may constitute a breach of the plea agreement which potentially subjects the defendant to a *de novo* resentencing under less

favorable terms.  *See United States v. Erwin*, 765 F.3d 219 (3d Cir. 2014).

Like the other aspects of Defendant's guilty pleas, the Court reviewed the terms of the written plea agreement with Defendant at the change-of-plea hearing and also questioned him about the appellate waiver during which he agreed to such terms and confirmed that he understood them.  (Docket No. 185 at 21-22).  He acknowledged that he had consulted his trial counsel about the appellate waiver, and stated that he was willing to give up his appellate rights in exchange for the other benefits of the plea agreement.  (*Id.*).  Amid this questioning, the Court specifically held that:

> THE COURT: [Mr. Isabella,] [y]ou should also understand that waivers of appeal are generally permissible if they're entered into knowingly and voluntarily, unless they would work a miscarriage of justice. There's a whole series of Third Circuit cases that say that. The latest one is United States versus Grimes that was handed down this year.
>
> Now, I have examined the record, such as I have it, and as you know, because I have your brother's case, too, I know quite a bit about this case. I've observed you here in this court, I've heard your responses to my questions, and at this point, I don't see any basis to invalidate your waivers in this case.

(*Id.* at 23).

Based on this record, the Court again finds that Defendant entered into this plea agreement knowingly and voluntarily.  The Court must next consider "whether enforcement [of the waiver] would work a miscarriage of justice" under the facts at hand.  *Mabry*, 536 F.3d at 237.  In so doing, the Court applies a "common sense approach" that takes into account "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting that error on

the government, and the extent to which the defendant acquiesced in the result." *Id.* at 242-43 (internal citations and quotations omitted). "Courts apply the miscarriage of justice exception sparingly and without undue generosity, but with the aim of avoiding manifest injustice." *United States v. Mitchell*, 538 F. App'x 201, 203 (3d Cir. 2013) (citing *Khattak*, 273 F.3d 557, 563 (3d Cir. 2001)).

Here, the asserted error is that trial counsel did not consult with Defendant concerning the filing of an appeal. (Docket No. 175). Defendant admits that he did not ask that an appeal be filed on his behalf. (*Id.*). However, he contends that he was under the impression at the sentencing hearing that he would be able to continue to work as a cab driver while serving his sentence at the Renewal Center. (*Id.*). He continues that after he learned of the Renewal Center's position, he had a conversation with trial counsel, asking him if there was anything they could do to which trial counsel responded "no." (*Id.*). Defendant maintains that he would have appealed the sentence if he had been properly advised by trial counsel that he would not be able to continue working as a cab driver during his time in community confinement. (*Id.*).

In his submission, Defendant has not provided any dates when these alleged conversations occurred but he does not appear to account for the 14 day deadline to file an appeal after the sentencing, (i.e., by Tuesday, October 14, 2014), which the Court reminded him of on the record, (Docket No. 150), or the fact that Defendant self-reported to the Renewal Center approximately 6-weeks after the sentencing around November 10, 2014. To the extent that Defendant complains that his counsel told him in November of 2014 that there was nothing he could do about the

Renewal Center's decision denying his request to work as a cab driver,[7] the time for filing an appeal had already expired. (Docket No. 175). Thus, the Judgment had become final and there literally was nothing that could be done to challenge the Court's sentence via the filing of a direct appeal. *See Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999) ("If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final [ … ] on the date on which the time for filing such an appeal expired.").

In addition, the Court denied Defendant's November 2014 Motion that his trial counsel filed on his behalf because it lacked jurisdiction to review the Bureau of Prison's decisions concerning the execution of Defendant's sentence including its designation of the Renewal Center as the place of confinement and any policies restricting his activities while housed there. *See Galloway v. Warden of F.C.I. Ft. Dix*, 385 F. App'x 59, 62 (3d Cir. 2010) (pursuant to 18 U.S.C. § 3621, the Bureau of Prisons is delegated the sole authority and discretion to designate the place of Defendant's confinement). Any appeal of that Order of Court would have been dismissed by the Court of Appeals for the same reason. *Id.*

But, even if the Court assumes that Defendant's interactions with his trial counsel occurred prior to the expiration of the appeal period, his recitation of the conversations makes clear that he actually did receive some counseling and the advice he received was not erroneous given the appellate waiver in the plea agreement. *See Plea Agreement* at ¶ A.8. Again, he was authorized to appeal his sentence only if: (1) the United States filed a direct appeal; or (2) if the sentence exceeded the applicable statutory limits or unreasonably exceeded the advisory guideline range.

---

[7] The Court notes that this is certainly plausible given trial counsel's filing of the Motion seeking such relief with this Court on November 12, 2014, (Docket No. 154), after someone purporting to be Defendant called Chambers.

*Id.*  These exceptions could not be invoked because the United States did not appeal the sentence and the length of same (6 months) was below the advisory guidelines range of 15 to 21 months and well within the potential statutory penalties of 20 years' incarceration at each count of conviction. *Id.*  If an appeal was filed, it would be a clear breach of the agreement and any advice to pursue such an unmeritorious appeal would be erroneous and, if followed, could have potentially led to adverse consequences for Defendant including rescission of the agreement and a *de novo* resentencing.  *See Erwin*, 765 F.3d 219. Again, the Court personally addressed Defendant about the appellate waiver provisions during the plea colloquy and he advised that he understood such terms and assented to same.  (Docket No. 185 at 18, 21-23).  In light of these facts, no miscarriage of justice would result from enforcement of the appellate waiver and Defendant was not prejudiced by the alleged failures of his trial counsel to consult him about an appeal.

Defendant's final allegation in his § 2255 Motion is that the Indictment should be dismissed because the grand jury that indicted him lacked any minorities in violation of the Constitution.  (Docket No. 175).  The Supreme Court has held that this type of contest to a defect in the Indictment must be made prior to the trial or entry of guilty plea, absent a showing of cause and prejudice.  *See Davis v. United States*, 411 U.S. 233, 242 (1973) ("We therefore hold that the waiver standard expressed in Rule 12(b)(2) governs an untimely claim of grand jury discrimination, not only during the criminal proceeding, but also later on collateral review."); *see also United States v. Clark*, 208 F. App'x 137, 142 n.5 (3d Cir. 2006) (arguments concerning defects in indictment are waived if not raised before trial.).  Here, during the plea colloquy, Defendant expressly waived any challenges to the constitutionality of the Indictment.

THE COURT: Moreover, if you plead guilty, do you understand

24

> you're giving up defenses that you might have had to the offenses
> charged, including defenses or challenges to the indictment based
> on the Constitution, and you won't be able to raise those defenses or
> challenges after you plead guilty?
>
> Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.

(Docket No. 185 at 13).   For the same reasons outlined above, this claim lacks merit as he entered

his guilty pleas with a full understanding that this type of defense to the Indictment was being

waived.

## V.    CONCLUSION

For the reasons stated herein, Defendant's Motion to Vacate, Set Aside or Correct Sentence

under 28 U.S.C. § 2255 [175] is denied.   In addition, the Court concludes that Defendant has

failed to make a substantial showing of the denial of a constitutional right and is not entitled to a

certificate of appealability.   An appropriate Order follows.

*/s Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date:   October 16, 2015

cc/ecf:  All counsel of record

      Defendant David Isabella, *pro se*
      759 Maytide Street
      Pittsburgh, PA 15227